**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAM VAN PHAN, <br><br>             Petitioner, <br> v. <br><br> WARDEN OF THE FEDERAL CORRECTIONAL INSTITUTION LEWISBURG, et al., <br><br>             Respondents. | CIVIL ACTION NO. 3:26-CV-00770 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Nam Van Phan ("Phan") brings this petition for writ of habeas corpus. (Doc. 1). On March 25, 2026, Phan filed the instant petition, requesting that Respondents Jessica Sage, Brian McShane, Todd Lyons, Markwayne Mullin, and Pamela Bondi[1] release him from custody at the Lewisburg Federal Correction Institution ("FCI Lewisburg"). (Doc. 1, at 2). On April 3, 2026, Sage filed a response to Phan's petition, and on April 9, 2026, Phan

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Phan is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Brian McShane, Todd Lyons, Markwayne Mullin, and Pamela Bondi are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Phan on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

filed a traverse. (Doc. 4; Doc. 5). For the following reasons, Phan's petition (Doc. 1) is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Phan's petition, Sage's response, and the exhibits thereto. (Doc. 1; Doc. 4). Phan was born in Vietnam on March 14, 1981, and on November 14, 1991, Phan was admitted into the United States with his family as a refugee at 10 years old. (Doc. 1, at 8). Phan was able to receive admission into the United States as a refugee because his father fought alongside American and allied troops during the Vietnam War. (Doc. 1, at 8). Phan received lawful permanent residence status in the United States on January 26, 1993, and his green card was backdated to the date he entered the United States. (Doc. 1, at 8).

In 2008, the Department of Homeland Security ("DHS") placed Phan in removal proceedings due to a 2001 criminal conviction for robbery and related crimes. (Doc. 1, at 9). Phan was twenty years old when he committed and voluntarily pled guilty to those crimes. (Doc. 1, at 9). On July 31, 2008, an immigration judge ordered Phan to be removed to Vietnam. (Doc. 1, at 9). Phan remained in ICE custody for approximately six months after the immigration judge ordered his removal. (Doc. 1, at 9). In early 2009, ICE released Phan from custody and placed him on an order of supervision. (Doc. 1, at 9). On January 10, 2014, Phan was arrested on simple assault and related charges. (Doc. 1, at 11). After his release from state custody, ICE did not re-detain Phan and instead resumed the conditions of his supervisory release. (Doc. 1, at 11).

While on supervised release, Phan lived with his wife and five-year old stepdaughter in Pennsylvania. (Doc. 1, at 8). Phan has a pending I-130 marriage petition filed on his behalf

by his United States citizen wife. (Doc. 1, at 8). Phan also financially supports and is involved in the life of his eleven-year-old son from a previous relationship. (Doc. 1, at 8). Phan is a construction company owner and property manager. (Doc. 1, at 8). Phan was also the former director of Code Ninja's Malvern, Pennsylvania, an organization that teaches computer programming to youths. (Doc. 1, at 9). In his petition, Phan provides that he fully understands the seriousness of his past criminal conduct and is ashamed of and remorseful for the harm he caused his victims, family and community. (Doc. 1, at 11).

On September 15, 2025, during a routine check-in appointment, ICE arrested and re-detained Phan indicating that circumstances had changed and Phan's removal was reasonably foreseeable. (Doc. 1, at 10). Phan was detained at the Moshannon Valley Processing Center before ICE transferred him to FCI Lewisburg. (Doc. 1, at 10). Phan does not have a Vietnamese passport, and ICE did not obtain travel documents for Phan before re-detaining him. (Doc. 1, at 12). On September 16, 2025, ICE provided Phan with a travel document application, which Phan completed and returned on September 28, 2025. (Doc. 4, at 4). On November 25, 2025, Phan's travel document application was forwarded to HQ-RIO for approval and submission to the Vietnam Consulate. (Doc. 4, at 4). On or about February 22, 2026, HQ-RIO submitted Phan's travel document application to the Attaché Vietnam Consulate. (Doc. 4, at 5). Since his September 2025 arrest, Phan has been separated from his family in immigration detention for approximately seven months. (Doc. 1, at 10).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or

3

decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 400 (D.N.J. 2025) (finding petitioner's continued detention without reasonably imminent removal is unreasonable and ordering release).

## III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1),

(3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil, 164 F.4th at 277-79* (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil, 164 F.4th at 278-79* (finding that length of confinement claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction over the legal question of whether Phan's detention after his order of removal became final has become unconstitutionally prolonged and unrelated to the purpose of removal. *Jennings*, 583 U.S. at 294; *Kahlil, 164 F.4th at 274-79*; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

Phan contends that his re-detention violates the Due Process Clause of the Fifth Amendment, section 1231 of the INA, 8 C.F.R. § 241.13, and the Administrative Procedure Act because the government failed to adequately articulate facts to support re-detention and the re-detention has exceeded six months and removal is not reasonably foreseeable. (Doc. 1, at 18-22). To support his contention that removal is not reasonably foreseeable Phan provides that he previously spent significant time in immigration detention during which the government was unable to remove him to Vietnam, he has been re-detained for approximately seven months and the government has not been able to remove him to Vietnam, and pursuant to the repatriation process for Vietnamese refugees who immigrated to the United States before 1995, there is no evidence that Phan is even eligible to be removed to Vietnam. (Doc. 1, at 20). Phan also contends that his transfer from a facility designated for immigration detainees to FCI Lewisburg, a prison for people serving criminal sentences, indicates that Phan's detention is for the purpose of punishment rather than lawful removal. (Doc. 1, at 3, 20).

The government counters that Phan has failed to make a good showing that there is no significant likelihood of his removal in the reasonably foreseeable future because his claims are speculative. (Doc. 4, at 2, 10). Nevertheless, to rebut Phan's showing, the government provides that ICE Enforcement and Removal Operations ("ERO") is in the process of obtaining travel documents for Phan and repatriating him to Vietnam. (Doc. 4, at 11). The government provides that it submitted Phan's travel document to the Vietnam Consulate on February 22, 2025, and it anticipates that Vietnam will issue a travel document for Phan in the reasonably foreseeable future. (Doc. 4, at 12). The government also provides that Phan's

due process rights have been protected while in custody by ICE's post-order custody review process. (Doc. 4, at 13). In his traverse, Phan counters that "anticipation is not evidence," and the government's conclusory assertions that there is a possibility of eventual removal is not enough to rebut his showing that there is not a significant likelihood of removal in the reasonably foreseeable future. (Doc. 5, at 3-4).

Section 1231 of the INA provides for the detention of noncitizens with final orders of removal. 8 U.S.C. § 1231. Pursuant to 8 U.S.C. § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Noncitizens convicted of certain criminal offenses and noncitizens whom the Attorney General finds to be a risk to the community or unlikely to comply with an order of removal may be detained beyond the 90-day removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001), the Supreme Court found that indefinite detention of a noncitizen with a final order of removal violates the Due Process Clause of the Fifth Amendment, and that detention of a noncitizen with a final order of removal must be limited with a definite endpoint. The Supreme Court determined that to discern whether such post-order of removal detention comports with the Due Process Clause of the Fifth Amendment, habeas courts must ask whether the detention "exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court found that detention post-order of removal is presumed reasonable for a period under six months. *Zadvydas*, 533 U.S. at 701. After the presumptively reasonable six-month period runs and the detained noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. As the period of

confinement grows, what counts as reasonably foreseeable future conversely shrinks. *Zadvydas*, 533 U.S. at 701. If removal is ultimately not reasonably foreseeable, habeas courts should hold continued detention unreasonable and order release. *Zadvydas*, 533 U.S. at 699-700.

Vietnam has long refused to accept Vietnamese nationals who came to the United States as refugees before 1995. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083-84 (C.D. Ca. 2020). After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam, and hundreds of thousands of people from the former Republic of Vietnam (South Vietnam), including Phan and his family, immigrated to the United States as refugees under various humanitarian programs. *See Trinh*, 466 F. Supp. at 1083-84. Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. *Trinh*, 466 F. Supp. 3d at 1083-84.

In 2008, the United States and Vietnam reached a diplomatic agreement, and Vietnam agreed to consider repatriation requests for certain Vietnamese immigrants, who had arrived in the United States after July 12, 1995.[2] *Trinh*, 466 F. Supp. 3d at 1083-84. In 2017 and 2018, ICE met with Vietnamese officials to negotiate the repatriation of pre-1995 Vietnamese immigrants; however, these efforts proved unsuccessful, and ICE instructed field offices to release pre-1995 Vietnamese immigrants on orders of supervision within 90 days of their final orders of removal. *Trinh*, 466 F. Supp. 3d at 1083-84. In November 2020, the United States and Vietnam entered into a memorandum of understanding ("MOU"), which created a

---

[2] After the Vietnam war, on July 11, 1995, the United States and Vietnam established normal diplomatic relations. U.S.—Vietnam Relations, U.S. Embassy & Consulate in Vietnam, https://vn.usembassy.gov/u-s-vietnam-relations/ (last visited April 21, 2026).

process for removing pre-1995 Vietnamese refugees. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen v. Hude*, 788 F. Supp. 3d 144, 148 (D. Mass. 2025). Under the 2020 MOU, for a Vietnamese immigrant with an order of removal to be eligible for acceptance of return to Vietnam, they must meet four conditions:

1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;
2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);
3. Resided in Vietnam prior to arriving to the United States and currently has no right to reside in any other country or territory;
4. [Redacted][3]

*Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen*, 788 F. Supp. 3d at 148.

Before a Vietnamese immigrant without a passport or other travel document can be repatriated, Vietnam must issue a passport or other travel document in response to a request from ICE. *Trinh*, 466 F. Supp. 3d at 1083-84. Vietnam requires proof of citizenship, so travel documents can be difficult to obtain as most refugees lack proof of citizenship because of war, displacement, rural births, or destruction of records. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026). Additionally, the process for repatriating pre-1995 Vietnamese refugees is highly individualized, so responses can take months and the Vietnamese

---

[3] The fourth mandatory condition is redacted and the government has not disclosed any information about what that condition requires. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Nguyen*, 788 F. Supp. 3d at 148. Therefore, the undersigned cannot determine with certainty whether Phan meets the requirements for removal to Vietnam under the 2020 MOU.

government may take no action rather than issuing a formal denial of an application for travel documents. *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026).

Courts in the Third Circuit have found that evidence of the process for procuring travel documents from Vietnam for pre-1995 immigrants establishes good reason to believe that removal of a pre-1995 Vietnamese immigrant detained under 8 U.S.C § 1231 is not reasonably foreseeable.[4] *Lam v. Noem*, No 3:25-cv-00397, 2026 WL 492383, at *6-*7 (W.D. Pa. Feb. 23, 2026) (finding removal not reasonably foreseeable for pre-1995 Vietnamese refugee with stateless status and a travel document application pending for five months); *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026) (finding removal not reasonably foreseeable for pre-1995 Vietnamese refugee with a travel document application pending for four months); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026) (finding same). Courts in the Third Circuit have also found that assertions from the government of a remote possibility of eventual removal is not sufficient evidence to rebut that showing. *Lam*, 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026).

---

[4] In *Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005), the Third Circuit found that Joseph, a noncitizen from Antigua-Barbuda with a final order of removal, failed to show that his removal was unlikely in the reasonably foreseeable future because DHS had requested travel documents and the issuing country expressed a willingness to issue the travel documents and had advised that travel documents would be forthcoming. *Joseph*, 127 F. App'x at 81. While the Court acknowledges the holding in *Joseph*, the case is distinguishable from Phan's because of the highly individualized process for and history of repatriation of Vietnamese refugees who immigrated to the United States before July 12, 1995. *See Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *see also Nguyen*, 788 F. Supp. 3d at 148. Further, the Vietnamese government has not expressed a willingness to issue travel documents to Phan outside of the 2020 MOU, to which the undersigned does not have access to the fourth eligibility factor, and which does not mandate that Vietnam will accept the Phan. *See Lam*, 2026 WL 492383, at *7. While the government anticipates Phan's travel documents, Vietnam has not advised that Phan's travel documents will be forthcoming. *See* (Doc. 4, at 5).

Phan has been re-detained under 8 U.S.C. § 1231 for over seven months, while the government has attempted to obtain travel documents for his removal. (Doc. 1, at 12; Doc. 4, at 4). Phan's presumptively reasonable six-month period of § 1231 detention has run. *Zadvydas* 533 U.S. at 701. By providing evidence of the highly individualized and unpredictable repatriation process for pre-1995 Vietnamese refugees, Phan has established good reason to believe that there is not a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 1, at 12-15); *Lam*, 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026). Phan's travel document application has been with the Vietnam Consulate for two months, with no indication if or when the application will be approved or travel documents will be issued. (Doc. 4, at 5).

To rebut Phan's showing, the government only provides that ERO is in the process of obtaining travel documents for Phan and repatriating him to Vietnam. (Doc. 4, at 12). The government's argument focuses on its contention that Phan failed to provide evidence to show good reason why removal was not reasonably foreseeable and only rebuts Phan's showing *in arguendo*. (Doc. 4, at 10-12). While the government avers that requesting travel documents alone is sufficient to rebut Phan's showing, the caselaw the government relies on for this assertion does not concern the issuance of travel documents from Vietnam for pre-1995 Vietnamese refugees. (Doc. 4, at 12); *Appiah v. Lowe*, No. 3:24-cv-2222, 2025 WL 510974, at *6 (M.D. Pa. Feb. 14, 2025) (finding the government rebutted the showing that removal was not reasonably foreseeable with evidence that the Ghanan petitioner underwent a repatriation interview with Ghanan officials, the government had been regularly communicating with the Ghanan embassy, and the petitioner's Ghanan citizenship had been established); *Grant v.*

*Warden of Cliton Cnty. Corr. Facility*, No. 1:22-cv-0331, 2022 WL 3045842, at *4 (M.D. Pa. Aug. 2, 2022) (finding petitioner failed to provide good reason that removal was not reasonably foreseeable by asserting that the government cannot establish he is a noncitizen from Jamaica); *Boyce v. Holder*, No. 4:09-cv-02254, 2010 WL 817482, at *7-*8 (M.D. Pa. 2010) (finding petitioner failed to show removal was not reasonably foreseeable because he failed to provide evidence that Panama had denied his citizenship or that Panama will refuse to issue travel documentation for him); *Robinson v. District Director of ICE*, No. 1:09-cv-0637, 2009 WL 3366439, at *4 (M.D. Pa. Oct. 19, 2009) (finding petitioner failed to meet his burden to show removal is not reasonably foreseeable by offering no evidence that the Liberian government will not issue a travel document). While Phan has completed a travel document application, which ICE has submitted to the Vietnam Consulate, the government's assertion that Vietnam will issue a travel document for Phan in the reasonably foreseeable future without any evidence in support is speculative and fails rebut Phan's showing. (Doc. 4, at 11-12). *Lam*, No 2026 WL 492383, at *7; *Luong v. Oddo*, 3:25-cv-00422, Dkt. No. 21 (W.D. Pa. Feb. 20, 2026); *Bo v. Bondi*, 3:26-cv-28, Dkt. No. 18 (W.D. Pa. Feb. 1, 2026). Accordingly, Phan's petition for writ of habeas corpus is **GRANTED**.[5] (Doc. 1).

---

[5] As the Court grants relief under the INA and Due Process Clause of the Fifth Amendment, the Court declines to address Phan's administrative procedure act claims at this time. (Doc. 1, at 18-19). The Court also notes that Phan seeks relief in the form of attorney's fees and costs. (Doc. 1, at 23). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016). (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025). (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Phan must request attorney's fees in a separate motion with accompanying exhibits.

## V.    CONCLUSION

For the foregoing reasons, Phan's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Phan from custody and restore the conditions of his prior supervisory release. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

**Dated: April 21, 2026**                                /s/ Karoline Mehalchick
                                                            **KAROLINE MEHALCHICK**
                                                            **United States District Judge**